IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HERMAN T. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-08-05-C |
| | ) | |
| JUSTIN JONES, DIRECTOR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Invoking 42 U.S.C. § 1983, Mr. Clark has sued Mr. Leon Wilson for denial of court access, deprivation of procedural due process, and retaliation.  Mr. Wilson has moved for summary judgment and the Court should grant the request on the procedural due process claims involving departure from state prison policy and on the causes of action involving denial of court access and retaliation.  The motion should be denied on the procedural due process claim concerning a failure to timely provide the exemption form and related documents to Mr. Clark.

## I.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When a summary judgment motion is filed, "[t]he court views the record and draws all favorable

inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255  (10th Cir. 2005) (citation omitted).

## II.   FACTUAL BACKGROUND AND THE PLAINTIFF'S CLAIMS

In 2005, Mr. Clark settled a civil rights action that he had prosecuted while in prison. First Amended Complaint at p. 3 (Aug. 14, 2008) ("Amended Complaint").  According to the Plaintiff, an unknown Department of Corrections ("DOC") employee, otherwise known as "John Doe," informed Jana Robinson of the settlement.  *Id.*  Ms. Robinson then sued Mr. Clark in state court and obtained a monetary judgment.  *Id.*  Following entry of the judgment, Ms. Robinson filed a garnishment action against Mr. Clark and sent the related paperwork to the DOC as the garnishee.  *Id.*  The garnishment summons stated that if the DOC held property belonging to Mr. Clark, it was to:

- file an answer stating this fact,

- withhold the property, and

- mail Mr. Clark a copy of the answer, the notice of garnishment and exemptions form, and application for a hearing on exemptions.[1]

When Mr. Wilson obtained the post-garnishment summons, he placed a "freeze" on the Plaintiff's inmate trust account.  Motion for Summary Judgment and Brief in Support at p. 3, Exhibit 1 (May 1, 2009) ("Motion for Summary Judgment").  Mr. Clark learned of the freeze when he unsuccessfully attempted to make a purchase at the canteen.  *See* Amended

---

[1]      *See* Response to Defendant Workman's Motion to Dismiss, Attachment 2, Garnishment Affidavit and Postjudgment General Garnishment Summons (Sept. 11, 2008).

Complaint at p. 4; Plaintiff's Motion to Deny Defendant's Motion for Summary Judgment and Brief in Support, Affidavit of Herman T. Clark (May 18, 2009) ("Plaintiff's Response").

Mr. Clark asserts four claims against Defendant Wilson:

- denial of court access,

- retaliation,

- deprivation of procedural due process for freezing the account without notice, and

- deprivation of procedural due process for freezing the account instead of following DOC policy regarding satisfaction of the garnishment.

Amended Complaint at pp. 2, 5-6; Plaintiff's Response at pp. 5-7, 7-18.

Mr. Wilson is entitled to summary judgment on the claims involving denial of court access, retaliation, and denial of due process based on violation of DOC policy. But the summary judgment motion should be denied on the claim based on freezing of the account without notice.

## III.   DENIAL OF COURT ACCESS

According to the amended complaint, Mr. Wilson withheld forms which would have enabled Mr. Clark to invoke exemptions in the state garnishment action.[2] From this conduct, Mr. Clark alleges an inability to access the state court. This cause of action is invalid as a matter of law.

---

[2]   *See supra* p. 3; *see also* Plaintiff's Response at p. 7 ("Mr. Wilson affirmatively hindered Plaintiff's efforts through deliberate delay in the delivery of Plaintiff's exemption form.").

The Fourteenth Amendment guarantees Mr. Clark "the right to 'adequate, effective, and meaningful' access to the courts." *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993) (citations omitted).  However, to prevail on a claim involving denial of court access, the Plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Mr. Clark cannot satisfy this element.

Even if Mr. Wilson had withheld the forms, Mr. Clark was not ultimately denied an opportunity to claim exemptions.  Under Oklahoma law, the  defendant "should" file a request for exemption within five days from receipt of the notice.  Okla. Stat. tit. 12 § 1174(c) (2004 supp.).  Once the five-day period ends, the defendant must claim an exemption by motion unless the parties otherwise agree.  *See id*. ("Any proceeding to claim an exemption initiated subsequent to five (5) days after receipt of notice shall be by motion unless otherwise agreed by the parties.").

Mr. Clark exercised his opportunity to seek an exemption by filing a motion, which was authorized under state law.[3]  Ultimately, however, the Plaintiff sought to withdraw the motion, citing "[p]ublic[] interest."  Motion to Dismiss, *Robinson v. Clark*, Case No. CJ-2005-612 (Can. Co. Dist. Ct. Dec. 8, 2008).

---

[3]      Motion to Exempt Wages and Release Funds to Prevent Undue Hardship, *Robinson v. Clark*, Case No. CJ-2005-612 (Can. Co. Dist. Ct. Sept. 29, 2008); *see also St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("it has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citations omitted)).

The Plaintiff asserts that his state court motion had created "[a] conflict of interest," which led to his voluntary withdrawal of the motion. Plaintiff's Response at p. 6. The Plaintiff does not identify the alleged "conflict of interest" or explain why it had impeded his access to the courts. *See id.* The dispositive issue is whether Mr. Clark could pursue his claim for exemptions in state court, and he could regardless of Mr. Wilson's alleged action.

Mr. Clark unquestionably had an opportunity to present his argument for exemptions in state court. Thus, as a matter of law, the alleged withholding of an exemption form did not impair Mr. Clark's access to court and Mr. Wilson is entitled to summary judgment on the claim. *See Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming summary judgment for the defendant on a cause of action for denial of court access because the plaintiff could not prove prejudice).

## IV.  RETALIATION

In alleging retaliation, Mr. Clark attributes the freezing of his account and withholding of the exemption form to his exercise of First Amendment rights involving his earlier suit against DOC employees.[4]  Mr. Wilson is entitled to summary judgment on this claim.

Prison officials may not retaliate against an inmate for the exercise of his constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). To prevail, a

---

[4]     Amended Complaint at p. 6 ("The freezing of Plaintiff's account, the denial of access to courts . . . is the adverse consequences which flowed from the Plaintiff engaging his constitutionally protected conduct."); *see also* Plaintiff's Response, Affidavit of Herman T. Clark at p. 3 ("If I had not filed and been successful on exercising my religious right in court, no one would have had reason to come after me.  It had never happened until I was successful in exercising my legal rights.").

prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Id.* at 949-50. When a prison official moves for summary judgment, the "inmate must submit evidence showing that a jury could reasonably find that a motivating factor behind [the] defendant['s] actions was retaliation for his prior . . . litigation." *Brown v. Sales*, 134 F.3d 382, 1998 WL 42527, Westlaw op. at 3 (10th Cir. Feb. 4, 1998) (unpublished op.) (citation omitted).[5]

---

[5]     The Plaintiff argues that "[s]ummary judgment is foreclosed to Defendant because his state of mind such as motive, knowledge or intent, is at issue." Plaintiff's Response at p. 7. For this proposition, the Plaintiff relies exclusively on *Ennis v. National Association of Business and Educational Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). Plaintiff's Response at pp. 7-8. According to the Plaintiff, the *Ennis* court "reasoned that although courts must consider summary judgment carefully when intent [knowing or ignorance] is at issue, an otherwise valid [claim] is not defeated by the mere incantations of intent or state of mind, [he was completely ignorant]." *Id.* (citing *Ennis v. National Association of Business and Educational Radio, Inc.*, 53 F.3d at 62). The Plaintiff's reliance on *Ennis* is misguided.

In *Ennis*, the Fourth Circuit Court of Appeals upheld a summary judgment ruling for the defendant. *Ennis v. National Association of Business and Educational Radio, Inc.*, 53 F.3d at 62. In explaining that result, the federal appeals court was actually discussing the insufficiency of a plaintiff's "mere incantation of intent" to withstand summary judgment. *Id.* In the cited portion of the opinion, the Fourth Circuit Court of Appeals stated:

> The building of one inference upon another will not create a genuine issue of material fact. Mere unsupported speculation, such as this, is not enough to defeat a summary judgment motion. At bottom, [the plaintiff] imputes to [the defendant] discriminatory motive, without factual support. Although courts must carefully consider summary judgment when intent is an issue, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Since [the plaintiff] cannot point to any circumstance surrounding her discharge that credibly raises an inference of unlawful discrimination, she failed to make an adequate showing on an essential element of her case.

*Id.* (citations omitted). Thus, in the passage cited by Mr. Clark, the Fourth Circuit Court of Appeals was stating that a plaintiff's mere incantation of intent cannot prevent summary judgment. *See id.* This language obviously does not support Mr. Clark's effort to avoid summary judgment based on

The Plaintiff believes that the adverse action occurred because he had previously filed a civil rights lawsuit against DOC employees. *See supra* p. 5. In response, Mr. Wilson presents an affidavit stating that he could not have harbored a retaliatory motive because he had been unaware of Mr. Clark's prior litigation with DOC personnel. Motion for Summary Judgment at p. 8, Exhibit 1.[6] In the face of the affidavit, Mr. Clark had a duty to provide some evidence of an improper motive. *See Smith v. Maschner*, 899 F.2d 940, 948 n.4 (10th Cir. 1990); *see also supra* p. 6. He did not.

Mr. Clark argues that this evidence came in the form of the chronology of events involving:

- his filing of a Section 1983 suit against two employees of the DOC,

- Ms. Robinson's acquisition of a judgment 30 years after the alleged wrongdoing,

- the DOC's receipt of the garnishment forms at its Oklahoma City office rather than his actual prison, and

- Mr. Wilson's alleged placement of a freeze on the account, departure from DOC policy, and withholding of forms.

Plaintiff's Response at pp. 7-10, 12-14. But even when the sequence of events is viewed from the Plaintiff's perspective, the Court could not infer a retaliatory motive.

---

his own "incantation" of a retaliatory motive on the part of Mr. Wilson.

[6] Mr. Wilson also argues that the alleged acts had conformed to Oklahoma law. Motion for Summary Judgment at pp. 8-9. The Court need not consider this argument because the claim is invalid on other grounds. *See supra* pp. 5-7; *infra* pp. 7-10.

The Plaintiff states that he had initiated the suit in 2002 against the warden and food administrator of Granite Reformatory. Amended Complaint at p. 3. According to Mr. Clark, the garnishment summons was mailed to the DOC roughly five years later. *Id*. at p. 4. And, the alleged retaliation took place even later, when the garnishment papers were mailed from the DOC's Oklahoma City office to Mr. Wilson. *Id*.

This version of events does not suggest any reason to infer a retaliatory intent on the part of Mr. Wilson. Mr. Clark sued two employees of Granite Reformatory,[7] and Mr. Wilson worked at Lexington Correctional Facility.[8] Mr. Wilson had not been a party to Mr. Clark's prior suit and he was unaffected by the allegations or outcome. *See Brady v. Houston Independent School District*, 113 F.3d 1419, 1423 (5th Cir. 1997);[9] *Wright v. Goord*, 554 F.3d 255, 273-75 (2d Cir. 2009) (upholding dismissal of a retaliation claim in part because the protected activity, a letter of complaint to the district attorney, had involved an incident that did not concern the defendant). And, once Mr. Clark settled the suit, roughly five years

---

[7]     *See* Amended Complaint at p. 3; *see also supra* p. 8.

[8]     *See* Amended Complaint at pp. 2-3.

[9]     In *Brady v. Houston Independent School District*, the plaintiff obtained a favorable verdict on a retaliation claim based on loss of her job duties in retaliation for statements that she had made about dealings between two individuals, Carney and Winkler. *See Brady v. Houston Independent School District*, 113 F.3d at 1423. The federal appellate court overturned the judgment, holding that insufficient evidence had existed regarding a retaliatory motive. *Id*. The court distinguished between Carney and the three individuals accused of retaliation: Cortese, Mahaffey, and Sokol. *Id*. Carney may have had a retaliatory motive because he had been the subject of the plaintiff's complaint to investigators. *Id*. at 1424. But the earlier complaint had not involved Cortese, Mahaffey, or Sokol. *Id*. As a result, the court found "it difficult to believe that any of the [defendants on the retaliation claim] would retaliate against [the plaintiff] whose protected speech did not adversely affect them in any way." *Id*. (footnote omitted).

passed before Mr. Wilson allegedly froze the account and withheld the garnishment forms. *See supra* p. 8.  In these circumstances, one could not reasonably infer a retaliatory motive on the part of Mr. Wilson from Mr. Clark's five-year old suit against two employees at a different facility.[10]

The Plaintiff also questions the timing of Ms. Robinson's suit.  Plaintiff's Response at p. 8; *see supra* p. 7.  Mr. Clark points out that he had been sued by Ms. Robinson only months after his receipt of a settlement in the suit against the warden and food administrator. Plaintiff's Response at p. 8.  But Mr. Clark does not allege that Mr. Wilson had any role in notifying Ms. Robinson of the settlement.  Instead, that action had been attributed to "John Doe."  Amended Complaint at p. 3.  Thus, the timing of Ms. Robinson's suit could not suggest a retaliatory motive on Mr. Wilson's part.

Finally, Mr. Clark appears to question the fact that the garnishment papers had been mailed to the DOC headquarters in Oklahoma City rather than to his attention at Lexington Correctional Center.  Plaintiff's Response at pp. 8-9; *see supra* p. 7.  But Mr. Clark acknowledges that these papers had been "mailed or delivered" by either Ms. Robinson or her attorney.  Amended Complaint at p. 4.  Mr. Clark has not explained how a mailing by Ms. Robinson or her attorney could suggest a retaliatory motive on Mr. Wilson's part.

---

[10]     *See Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir. 1994) (holding that an inference of retaliatory motive cannot "be made" when the protected activity had preceded the adverse action "by as much as three years"); *see also Stover v. Martinez*, 382 F.3d 1064, 1074 (10th Cir. 2004) (holding as a matter of law that a "lapse of over two years" between the protected activity and the adverse action "is too attenuated to support an inference of causation" on a retaliation claim).

As noted above, Mr. Wilson has stated under oath that he had not even known about Mr. Clark's suit against DOC employees.  *See supra* p. 7.  Mr. Clark has not provided any evidence to the contrary;[11] and without such knowledge, a retaliatory motive is lacking.[12]

Mr. Wilson has presented unrebutted evidence that he lacked a retaliatory intent, and he is entitled to summary judgment on this cause of action.

## V.    PROCEDURAL DUE PROCESS

Mr. Clark alleges two due process violations from the "freeze" on his account.  *See supra* p. 3.  First, the Plaintiff claims that Defendant Wilson had frozen the account without providing copies of the garnishment summons, the DOC's corresponding answer, or an exemption form.  Amended Complaint at pp. 2, 5-6; Plaintiff's Response at pp. 14-18; *see*

---

[11]     *See Sales v. Wisconsin Department of Corrections*, 493 F.3d 913, 925 (7th Cir. 2007) (stating that for a retaliation claim, the timing of the plaintiff's termination would be suspicious only "if the relevant decision-makers knew about his involvement" in protected activity); *see also Bibbs v. Early*, 541 F.3d 267, 274-75 (5th Cir. 2008) (holding that an effort to add a retaliation claim was futile because the "chronology of events" could create an inference of retaliation only if prison officials had been aware of the inmate's earlier exercise of a constitutional right).

[12]     *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176-77 (10th Cir. 2007) (upholding summary judgment for the defendant on a retaliation claim based on the absence of any evidence that information about the plaintiff's protected activity had been relayed to the decision-maker); *see also* Report and Recommendation at p. 38, *Thomas v. Parker*, Case No. CIV-07-599-W (W.D. Okla. May 27, 2008) (unpublished) (proposed findings and conclusions by magistrate judge) (recommending dismissal of a retaliation claim because "Plaintiff fail[ed] to identify . . . what knowledge, if any, the Defendants in this action had concerning the lawsuit [on which the retaliation claim was based]"), *adopted*, Order (W.D. Okla. July 25, 2008) (unpublished order by district judge); *accord Sales v. Wisconsin Department of Corrections*, 493 F.3d 913, 925 (7th Cir. 2007) (upholding summary judgment for the defendant on a retaliation claim because the plaintiff lacked evidence that the decision-makers had known about the plaintiff's engagement in constitutionally protected activity); *Kilpatrick v. King*, 499 F.3d 759, 768 n.5 (8th Cir. 2007) (upholding summary judgment for the defendants on a retaliation claim in part because there was no evidence that they had known about the protected activity when they made the underlying decision).

*supra* p. 3.  Second, Mr. Clark claims that instead of freezing the entire account, Mr. Wilson

should have followed DOC policy which limited the garnishment to ten per cent of the

inmate account.  Amended Complaint at pp. 5-6; Plaintiff's Response at p. 14; *see supra* p. 3.

In response, the Defendant urges insufficiency of the evidence and qualified immunity

because he had acted in compliance with the post-garnishment summons.  Motion for

Summary Judgment at pp. 9-14.[13]  The arguments fail regarding the claim for prior notice,

but Mr. Wilson is entitled to summary judgment on the claim involving departure from DOC

policy.

      A.     The Post-Judgment Garnishment Summons

Mr. Wilson argues that he had complied with the directives in the post-garnishment

summons.  Motion for Summary Judgment at p. 10.  That document provided in relevant

part:

> You are hereby summoned, pursuant to the attached affidavit as garnishee for the defendant, HERMAN CLARK, and required, within ten (10) days from the date of service of this summons upon you, to answer according to law whether you are indebted to, or have in your possession or under your control, any property belonging to such defendant, to file your answer with the clerk of this court, and, at the time that you file your answer, to deliver or mail a copy of your answer to the plaintiff's attorney, or plaintiff if not represented by an attorney, and to the defendant.  You are further ordered to withhold any such property or indebtedness belonging to such defendant or owing on the date of service of this summons . . . .

---

[13]     In the reply, Mr. Wilson states: "[A]ny challenges to the garnishment are properly brought in the court issuing the garnishment summons."  Reply to Response to Motion for Summary Judgment at p. 7 (May 26, 2009).  Because the argument was first raised in the reply brief, the Court need not consider it.  *See Garcia v. Lemaster*, 439 F.3d 1215, 1220 (10th Cir. 2006) (declining to address an argument raised for the first time in a reply brief).

> If the garnishee is indebted to or holds property or money belonging to the defendant, the garnishee immediately shall mail by first class mail [or hand deliver] a copy of the notice of garnishment and exemptions and the application for hearing, to the defendant at the last known address of the defendant shown on the records of the garnishee at the time the garnishment summons was served on the garnishee.

Response to Defendant Workman's Motion to Dismiss, Attachment 2, Postjudgment General Garnishment Summons (Sept. 11, 2008).

B.    Lack of Notice

As stated above, Mr. Clark alleges that prior to the freeze, he should have received notice of the garnishment summons, the DOC's corresponding answer, and an exemption form. *See supra* p. 3. Without stating whether such notice was provided, Mr. Wilson implies that he had complied with the post-garnishment summons. *See* Motion for Summary Judgment at pp. 10, 13. But if the Plaintiff's sworn account is credited, Mr. Wilson did not comply with the summons because that document had required the DOC to promptly supply Mr. Clark with a copy of the garnishee's answer, the garnishment summons, and the application for exemptions. *See supra* pp. 11-12. And Mr. Clark has presented evidence that:

- he was informed of the freeze on September 6, 2007,[14] and

- he did not receive copies of the documents until October 25, 2007.[15]

---

[14]    Plaintiff's Response, Affidavit of Herman T. Clark at p. 2.

[15]    The amended complaint was filed under oath except for matters alleged on information and belief. Amended Complaint at p. 9. In the amended complaint, Mr. Clark unequivocally stated that he had not received the garnishment forms until October 25, 2007. *Id.* at p. 5. This statement in the amended complaint was unconditional rather than on information and belief. *Compare Hall v.*

Mr. Wilson states that he complied with the post-garnishment summons, but he fails to present any evidence that he had provided the notice mandated by the summons. The lack of evidence to rebut Mr. Clark's sworn statement is fatal to Mr. Wilson's argument for summary judgment. If Mr. Wilson disobeyed the summons by withholding the exemption form and related documents, he obviously cannot obtain summary judgment based on his compliance with the summons.

C.    Departure from DOC Policy

Mr. Clark also contends that rather than freeze the entire account, Mr. Wilson should have followed DOC policy by deducting only ten per cent of the account to satisfy the garnishment. Amended Complaint at pp. 5-6; Plaintiff's Response at p. 4; *see supra* p. 3.[16] Mr. Wilson is entitled to qualified immunity on this claim because his actions were objectively reasonable even under the Plaintiff's version of the facts.

---

*Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." (citation omitted)), *with Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) ("at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded" (citation omitted)), *and Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (providing that "statements of mere belief must be disregarded" in connection with a motion for summary judgment (citation omitted)).

[16]    Mr. Clark bases this claim on a DOC policy which allegedly authorizes payment of "State Court ordered costs" by a mandatory charge of ten per cent of the inmate's "net pay" or "earnings." Amended Complaint at p. 5. For the due process claim, Mr. Clark apparently assumes that Ms. Robinson's judgment would constitute "State Court ordered costs" and that all of the funds in his trust account would be protected by the DOC policy. The Court may assume *arguendo* that both premises of the argument are correct. *Cf. Bueno v. Pyle*, 24 Fed. Appx. 917, 919 (10th Cir. Dec. 5, 2001) (unpublished op.) (rejecting a prisoner's Section 1983 claim involving garnishment of monetary gifts in violation of state law, and thus the federal constitution, because the state law had protected only the inmate's "earnings" rather than his "monetary gifts").

Because Mr. Wilson has asserted qualified immunity, Mr. Clark must identify a specific constitutional right and show that it had been "clearly established" before the alleged misconduct. *See Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005). If the right was "clearly established," the defendant must prove that his conduct was objectively reasonable. *See Cannon v. City & County of Denver*, 998 F.2d 867, 874 (10th Cir. 1993). In assessing reasonableness, the Court may consider the defendant's reliance on a state statute that had explicitly sanctioned the alleged conduct.[17] If individuals of reasonable competence could disagree on the issue, the defendant would be entitled to qualified immunity. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Mr. Clark has adequately identified a violation of procedural due process through the freeze on the account,[18] and the Court may assume *arguendo* that the underlying constitutional right had been clearly established. But even under the Plaintiff's scenario, Mr. Wilson had acted reasonably when he froze the entire account based on the directive in the post-garnishment summons.[19]

---

[17]     *See Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) ("In considering the 'objective legal reasonableness' of the state officer's actions, one relevant factor is whether the defendant relied on a state statute . . . that explicitly sanctioned the conduct in question." (citations omitted)).

[18]     Report and Recommendation on the Claims Involving Defendants Wilson and Bartling at pp. 19-21 (Feb. 25, 2009) (unpublished proposed findings and conclusions by magistrate judge), *adopted*, Order Adopting Report and Recommendation (Mar. 26, 2009) (unpublished order by district judge).

[19]     Previously, Mr. Wilson had urged qualified immunity based on Mr. Clark's opportunity to seek redress through the prison grievance system and state court. The Court rejected this argument. Report and Recommendation on the Claims Involving Defendants Wilson and Bartling at pp. 21-22 (Feb. 25, 2009) (unpublished proposed findings and conclusions by magistrate judge), *adopted*,

As stated above, the Court may consider reliance on a state statute in connection with the reasonableness of a defendant's action. *See supra* p. 14. Here, the summons required withholding of all of Mr. Clark's property within the DOC's control. *See supra* pp. 11-12. Service of the summons triggered Okla. Stat. tit. 12 § 1185 (2001), which provides:

> From the time of the service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount of the property, moneys, credits and effects in his possession or under his control, belonging to the defendant or in which he shall be interested, to the extent of his right or interest therein, and of all debts due or to become due to the defendant, except such as may be by law exempt from execution. Any property, moneys, credits and effects held by a conveyance or title void as to the creditors of the defendant, shall be embraced in such liability.

Okla. Stat. tit. 12 § 1185 (2001). Under this statute, Ms. Robinson acquired an equitable lien over the funds in Mr. Clark's inmate account.[20] With this lien, the funds were automatically "placed in custodia legis or in the custody of the court." *DPW Employees Credit Union v. Tinker Federal Credit Union*, 925 P.2d 93, 95 (Okla. Ct. App. 1996) (citation omitted).

In light of the summons and the DOC's resulting statutory obligation, Mr. Wilson froze the Plaintiff's entire inmate account. *See* Motion for Summary Judgment, Exhibit 1. As a matter of law, this conduct was objectively reasonable because it had been compelled by the garnishment summons, state law, and the existence of an equitable lien in favor of Ms.

---

Order Adopting Report and Recommendation (Mar. 26, 2009) (unpublished order by district judge).

[20]     *See Halliburton Oil Producing Co. v. Grothaus*, 981 P.2d 1244, 1253 (Okla. 1998) ("From the time of garnishment summons service, money *then in the hands* of the garnishee is impressed with an equitable lien in garnishor's favor." (emphasis in original)); *DPW Employees Credit Union v. Tinker Federal Credit Union*, 925 P.2d 93, 95 (Okla. Ct. App. 1996) (citation omitted) ("In Oklahoma, a garnishment lien attaches at the time the garnishment summons is served upon the garnishee." (citation omitted)).

Robinson over the proceeds in the inmate account.  Accordingly, Mr. Wilson is entitled to qualified immunity on the claim involving deprivation of procedural due process for his placement of a freeze on the entirety of the inmate account.[21]

## VI.    RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

The Court should:

- grant summary judgment to Defendant Wilson on the claims involving denial of court access, retaliation, and denial of due process with respect to a freeze on the entire inmate account and

- reject the Defendant's argument for summary judgment on the claim concerning deprivation of procedural due process through a lack of notice.

The parties can object to the present report and recommendation.  Any such objection must be filed with the Clerk of this Court by August 11, 2009.  *See* W.D. Okla. LCvR 72.1. The failure to timely object would foreclose appellate review of the suggested rulings.[22]

## VII.   STATUS OF THE REFERRAL

The referral is terminated.  If the presiding district judge adopts the report, she may wish to recommit the matter to the undersigned for further pretrial management.

---

[21]    *See Morton v. City of Little Rock*, 934 F.2d 180, 184 (8th Cir. 1991) (upholding an award of summary judgment on grounds of qualified immunity because the defendant's conduct had involved compliance with a subpoena).

[22]    *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

16

Entered this 22nd day of July, 2009.

Robert E. Bacharach
United States Magistrate Judge